IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DENARD GALLOWAY,

    Petitioner,

v.

MICHAEL WENEROWICZ, Superintendent;
THE ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA; LEO
CIARAMITARO, ADA WESTMORELAND
COUNTY DISTRICT ATTORNEY,

    Respondents.

Civil Action No. 13-956
Judge Cathy Bissoon/
Chief Magistrate Judge Maureen P. Kelly

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

Denard Galloway ("Petitioner") has filed this Petition, seeking to attack his state court convictions for first degree murder and conspiracy. It is respectfully recommended the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), ECF No. 1, be dismissed and that a certificate of appealability be denied.

### II. REPORT

#### A. BACKGROUND FACTS

Petitioner was charged with criminal homicide and related offenses relative to a shooting incident that occurred in February, 1999, outside a bar in New Kensington, Pennsylvania. On February 23, 2000, Petitioner was convicted of first degree murder and other charges by a jury in the Court of Common Pleas of Westmoreland County. Following a lengthy appeal, the Pennsylvania Superior Court granted Petitioner a new trial.

A second jury trial was conducted in the Court of Common Pleas of Westmoreland County in February, 2005. At the second trial, the Commonwealth's star witness, Amy

Ziccarelli ("Ziccarelli"), who had known Petitioner from purchasing drugs from him, testified that she saw Petitioner and the victim agree to a drug deal, leave from sitting next to her at the bar, then return a few minutes later. She saw Petitioner counting money and heard Petitioner say to his friend that the victim underpaid for the drugs. Petitioner and the friend walked out of the bar, and Ziccarelli followed them. She saw Petitioner and his friend approach the victim and heard Petitioner ask the victim about the 51 dollars that Petitioner was underpaid. She then heard two or three shots and saw Petitioner running away from the victim. State Court Record ("SCR"), N.T., 2/7-14/2005, at 361 – 370.

Ziccarelli's testimony was corroborated by another witness, Linda Smith ("Smith"). Smith testified that she knew both Petitioner and the victim. She testified that she came out of the bar after the victim had left the bar and was talking to the victim. She saw the Petitioner and greeted him. She then walked up the street, glanced back and saw the victim and Petitioner near each other on the passenger side of the car. She then continued to walk and shortly thereafter heard two gun shots. Id., N.T., at 232 – 253.

Petitioner did not take the stand in his own defense during the guilt phase of the trial. On February 14, 2005, a jury found him guilty of murder in the first degree and conspiracy to commit criminal homicide. The jury did not impose the death penalty. Accordingly, Petitioner was sentenced to life without the possibility of parole.

**B. PROCEDURAL HISTORY**

As we write primarily for the parties who are familiar with the procedural history of this case in the state courts, we will forego a repetition of that procedural history and adopt the procedural history as recounted by the Pennsylvania Superior Court. ECF No. 12-14 at 2 – 5.

As to the procedural history before this Court, Petitioner filed a pro se Petition, ECF No. 1, and a Brief in Support of the Petition, ECF No. 2. Petitioner asserted only one ground for relief:

> **GROUND ONE:** Ineffective assistance of trial counsel for failure to take appropriate action in response to the trial court's ex parte comments to the jury venire and juror misconduct.
>
> (a) Supporting facts. . . : Prior to trial the court made comments to the venire which were violative of Petitioner's constitutional rights. Please see Memorandum in Support. Also a member of the venire committed misconduct and tainted the venire from which trial counsel should have taken corrective action. Please see memorandum.

ECF No. 1 at 5. Respondents filed their Answer and attached copies of the state court record. ECF No. 12. Respondents denied that Petitioner was entitled to relief. Respondents also caused the original state court record to be transmitted to this Court. Petitioner then filed a Reply to the Commonwealth's Answer. ECF No. 16.

## C. APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because the instant Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted). The Supreme Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 412-13. The United States Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999) (en banc)). Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts, 228 F.3d at 197.

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

4

## D. DISCUSSION

We note that in "Ground One" of the Petition, Petitioner actually asserts two claims for habeas relief. First, he claims that trial counsel was ineffective for failing to take appropriate action with respect to the trial judge's welcoming comments to the entire jury pool, when the trial judge observed that there were no African-Americans in the jury pool. In this regard, Petitioner asserts that he is African-American. ECF No. 2 at 11. Second, Petitioner claims that trial counsel was ineffective for failing to take appropriate action, after counsel learned during individual voir dire, that Juror No. 3 had, earlier that morning, made reference to lynching in the jury pool room, after the trial judge made his welcoming comments.

On appeal, the state courts addressed the first claim but not the second claim. Accordingly, we apply the AEDPA deference to the first claim and review the second claim *de novo*.

### 1. Failure to Object and Take Corrective Action to Trial Judge's Welcoming Comments.

The relevant facts giving rise to Petitioner's first claim of ineffectiveness of trial counsel are as follows. It is apparently customary that a judge of the Court of Common Pleas of Westmoreland County welcomes the jury pool at the beginning of the week when the entire jury pool gathers together before they are separated into smaller groups to undergo individual voir dire to be chosen as jurors for trials.[1] Judge John E. Blahovec, Petitioner's trial judge, was the

---

[1] Petitioner's trial judge explained the practice as follows:

> It is customary in Westmoreland County for one of the judges to greet the entire panel of prospective jurors on the morning they report for jury duty. This welcoming occurs in the office of the jury commissioners and prior to any of the prospective jurors being placed into a smaller panel and sent to a courtroom where a trial is to begin. This greeting is not transcribed and no attorneys or

(footnote continued. . .)

judge who welcomed the jury pool on the week that the jury was chosen for Petitioner's second trial. No attorneys or defendants were present at these initial welcoming remarks. During these introductory comments, Judge Blahovec observed that there were no African-Americans in the jury pool and made a comment to that effect.

After Judge Blahovec's welcoming remarks, the prospective jurors were placed in a smaller panel for voir dire. During individual voir dire questioning, the assistant district attorney, Mr. Koenig, asked Juror No. 3 about his responses to the standard juror questionnaire:

> Q. Okay. Sir, you stated basically from reading between the lines of your questionnaire that in spite of you knowing a good number of people that you do know, you didn't – there was no reason that you couldn't be a fair juror in this case, is that correct?
>
> A. Well as far as the system. I get a little philosophical. I notice there was no black guys in the whole thing. So, I'm making jokes, who we lynching today, you know. You brought up the race stuff. I said there ain't one black guy, all white people in there. It's just, you know, stuff from way back when and all that stuff. So, yeah, I don't feel comfortable about being on this thing any way.
>
> Q. You don't?
>
> A. No, not a bit.
>
> Q. Okay.
>
> A. There's got to be some kind of - - I mean I don't understand why there wasn't not [sic] even a black girl. You got 150 people down there. Only because you brought it up, Judge. That's my come back to your thing. But as far as the other stuff goes, I know a lot of people, but it was none of my business.

SCR, N.T., 2/7/05, at 45-46. Thereafter, Juror No. 3 was examined by defense counsel, Mrs. Smarto. After Juror No. 3 left the jury room, the assistant district attorney

---

defendants are present. No cases are discussed and no instructions on the relevant law are given. Such a welcoming is what occurred in this case.

ECF No. 12-14 at 9 (quoting trial court opinion).

challenged Juror No. 3 for cause. Judge Blahovec granted the challenge and Juror No. 3 was excused. N.T., 2/7/05, at 47-48.

After the individual voir dire of Juror No. 4 and her departure from the jury room, Judge Blahovec commented to counsel about Juror No. 3's responses.

> THE COURT: Okay, that's C-1. Before we forget, Juror Number 3 was talking about comments I made about race. Just so you understand –
>
> MR. KOENIG: You didn't.
>
> THE COURT: Well, I did. When I went downstairs and talked to the jurors this morning, I was particularly aware of the fact that there were no African/Americans, but my opinion has been based on experience over the years that jurors take their job very seriously and I did make a comment irrespective of the race, I've seen people irrespective of what the color is, people taking decisions very seriously. What I was trying to tell them, and I'll say this to any juror, the best part of my job is watching what jurors do and how seriously they take their responsibility. I did specifically say, you know, I have had all white juries acquit African/American defendants more times that I can count. Or that I can remember certainly. So, that's where I came from. The record should be clear about this. I made a comment downstairs just talking to the jurors in the context of how seriously jurors take their responsibility irrespective of, you know, the racial issue. We've been through how the jurors are selected and stuff and the driver's license and all that stuff before. That's why it doesn't come up that often. But I wanted to make it clear what I said to [Juror No. 3].
>
> MRS. SMARTO: Yes.
>
> THE COURT: Okay.

SCR, N.T., 2/7/05, at 51 – 52.

Petitioner apparently claimed before the Pennsylvania Superior Court that his Sixth Amendment right to have counsel present at all "critical stages" of a criminal proceeding was violated when the trial judge made his welcoming comments to the jury pool.[2] It appears that

---

[2] We say apparently claimed because we do not find Petitioner's pro se brief to the Pennsylvania Superior Court in the record appended to the Answer nor in the original state court record. However, in the pro se Petition for Allowance of Appeal from the Superior Court's decision, Petitioner did argue that "Subsection 'A' of Appellant's brief [to the Superior Court] alleged

(footnote continued. . .)

7

Petitioner also argued that his trial counsel was ineffective for not asserting that the trial court violated his Sixth Amendment right to have counsel present and for failing to request corrective action. Petitioner contended that the judge's welcoming comments to the entire jury pool amounted to jury instructions. As such, he asserted that his right to have counsel present at a critical stage of the proceedings was violated. See ECF No. 12-14 at 7 ("Appellant first claims that trial counsel was ineffective for failing to object and take appropriate action in response to the trial court's introductory comments to the jury pool."). Petitioner repeats those arguments before this Court. See ECF No. 2 at 12 ("the court's welcoming comments outside the presence of counsel and Petitioner amount to a jury instruction for which the Sixth Amendment requires counsel's presence.").

### a. The Superior Court's decision is not "contrary to" United States Supreme Court precedent.

In denying Petitioner's appeal and affirming the denial of relief, the Superior Court applied the three pronged state law test of ineffective assistance of counsel known as the Pierce standard. Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987). See ECF No. 12-14 at 6. The Pierce standard has been found to be materially identical to the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Werts, 228 F.3d at 203. The United States Court of Appeals for the Third Circuit has ruled that this Pierce standard is not "contrary to" Strickland, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." Id. at 204.

---

'[t]he court's comments were made at a critical stage; amount to a jury instruction; and violate Appellant's right to counsel.'" ECF No. 12-14 at 23.

Petitioner has failed to show that the Superior Court's disposition is contrary to precedent from the United States Supreme Court in either of the two senses of "contrary to." First, Petitioner has failed to show that the Superior Court's disposition of this claim is contrary to Strickland in the first sense of "contrary to" i.e., Petitioner has not established that the Superior Court has applied the wrong rule of law. Second, Petitioner has not established that the Superior Court's disposition is "contrary to" United States Supreme Court precedent in the second sense, i.e., that the Superior Court reached an outcome contrary to that reached by the United States Supreme Court on a set of materially indistinguishable facts. Petitioner has not pointed to any such United States Supreme Court case that has a set of materially indistinguishable facts to the present case.

### b. The Superior Court's decision is not an "unreasonable application" of United States Supreme Court precedent.

Petitioner also argues that the Pennsylvania Superior Court's decision constitutes an unreasonable application of United States Supreme Court precedent. However, Petitioner fails to carry his requisite burden to establish that the Superior Court's decision was an unreasonable application of Supreme Court precedent in existence at the time of the Superior Court decision.

Petitioner's first claim is that his trial counsel was ineffective for failing to object or take corrective action concerning the trial judge's welcoming comments, which Petitioner alleges occurred at a critical stage and, therefore, denied him counsel in violation of the Sixth Amendment.[3]

---

[3] There is a distinction between a denial of counsel claim sometimes referred to as a Cronic claim, named after Cronic v. United States, 466 U.S. 468 (1984) and an ineffective assistance of counsel claim, sometimes referred to as a Strickland claim. Petitioner herein is making a Strickland claim that his trial counsel was ineffective for failing to raise a Cronic claim of denial of counsel at the "critical stage" of the trial judge's welcoming comments. In a Cronic denial of
(footnote continued. . .)

9

In Strickland, the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the defendant must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). In reviewing counsel's actions, the court presumes that counsel was effective. Strickland, 466 U.S. at 689. There is no one correct way to represent a client and counsel must have latitude to make tactical decisions. Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir. 1990)("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained."). In light of the foregoing, the Court of Appeals for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)(quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391.

Before commencing review of the Superior Court's reasoning with respect to Petitioner's ineffective assistance of counsel claim, we must address what a criminal defendant must show in

---

counsel claim, if counsel is denied at a "critical stage", prejudice is presumed. In a Strickland ineffective assistance claim, the criminal defendant has the burden to prove prejudice.

10

order to establish a denial of counsel in violation of the Sixth Amendment. As the United States Supreme Court has explained: "[a] trial would be presumptively unfair, we said, where the accused is denied the presence of counsel at 'a critical stage,' *id.*, at 659, 662, 104 S.Ct. 2039, a phrase we used in *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), and *White v. Maryland*, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (per curiam), to denote a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused." Bell v. Cone, 535 U.S. 685, 695-96 (2002). "Critical stages have been defined as 'those links in the prosecutorial chain of events in which the potential for incrimination inheres or at which the opportunity for effective defense must be seized or foregone.' *Yohn v. Love*, 76 F.3d 508, 522 (3d Cir. 1996) (quoting *United States ex rel. Reed v. Anderson*, 461 F.2d 739, 742 (3d Cir. 1972)). The Supreme Court has also 'defined the scope of the right to counsel by a pragmatic assessment of the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel.'" Gov't of Virgin Islands v. Alexander, No. CRIM. A. 1999/014, 2000 WL 1739216, at *1 (D.V.I. June 1, 2000).

In the instant case, the issue here is not whether Petitioner was denied counsel at the welcoming comments by his trial judge but whether that was a critical stage within the contemplation of the United States Supreme Court precedent. The Superior Court held it was not such a "critical stage." Specifically, the Superior Court found that trial counsel was not ineffective for failing to object to the trial court's comments on the basis Petitioner did not have a right to counsel at the stage of a judge making welcoming remarks to a jury pool. In other words, the Superior Court found that the stage at which the trial court gave the welcoming comments, did not constitute a "critical stage" for Sixth Amendment right to counsel purposes. Accordingly, the Superior Court concluded that because the claimed violation of the right to

11

counsel at a critical stage was a meritless claim, Petitioner's trial counsel could not be ineffective for failing to raise such a meritless claim. ECF No. 12-14 at 8 – 10.  Petitioner fails to establish that this was an unreasonable application of Strickland.  Nor do we find it to be such. See, e.g., Werts, 228 F.3d at 203 ("counsel cannot be ineffective for failing to raise a meritless claim.").  We find this to be an eminently reasonable disposition of Petitioner's ineffectiveness claim.

In the alternative, even if this Court conducted *de novo* review of Petitioner's Sixth Amendment ineffective assistance of trial counsel claim for failing to raise the challenge to the trial court's welcoming comments, we would find that in light of the eyewitness testimony of Smith and Ziccarelli, Petitioner could not prove that he was prejudiced by the failure of his trial counsel to somehow challenge the judge's welcoming comments.[4]

Accordingly, Petitioner's claim that his trial counsel was ineffective for failing to object to, or otherwise raise the issue of the trial court's welcoming remarks, does not merit the grant of habeas relief.

---

[4] Moreover, contrary to Petitioner's arguments that he does not have to prove prejudice, ECF No. 2 at 12, Petitioner is required to prove prejudice in order to succeed on his ineffective assistance of counsel claim.  This is so even if it were true that denial of counsel at the time that the trial judge gave his welcoming comments was a "critical stage" and even if it were true that prejudice is presumed for such a denial of counsel claim.  In other words, Petitioner would still have to prove prejudice to succeed on his ineffective assistance of counsel claim even if a complete denial of counsel at a critical stage is a structural error and even if we assume that he had established such a structural error.  Torres v. Thaler, 395 F. App'x 101, 103 (5th Cir. 2010) ("We refused to 'hold that a structural error [i.e., one where prejudice is presumed] alone is sufficient to warrant a presumption of prejudice in the ineffective assistance of counsel context'"); Purvis v. Crosby, 451 F.3d 734, 743 (11th Cir. 2006) ("prejudice may not be presumed but must be shown in order to establish ineffective assistance of counsel based on the failure to raise a claim of structural error at trial. For the same reasons that prejudice cannot be presumed in order to satisfy the prejudice requirement when an objection to structural error was not made at trial, it cannot be presumed to satisfy the prejudice component of an ineffective assistance claim arising from the same failure to preserve the structural error."); Ward v. Hinsley, 377 F.3d 719, 726 (7th Cir. 2004).

## 2. Failure to Challenge the Jury Pool based on Juror No. 3's Statements.

Petitioner claims that his trial counsel was ineffective for failing to do something about Juror No. 3's statements made to the entire jury pool. ECF No. 2 at 13. ("… counsel should have requested a different venire. Alternately, counsel should have examined the selected jurors and the remainder of the venire regarding the substance of juror number three's 'jokes,' and whether or not prejudice inured therefrom."). Petitioner also argues that the state courts failed to specifically address this discrete claim of ineffective assistance of trial counsel. It appears that Petitioner is correct that the state courts failed to specifically address this discrete claim of ineffective assistance of counsel. Hence, we will provide *de novo* review of this claim. Boyd v. Waymart, 579 F.3d 330, 334 (3d Cir. 2009) ("[w]e review de novo issues that the state court did not decide on the merits.") (quoting Bond v. Beard, 539 F.3d 256, 263 (3d Cir. 2008)).

As noted above, in order to succeed on an ineffective assistance of counsel claim, a habeas petitioner must establish prejudice, i.e., that there is a reasonable probability that the outcome of the trial would have been different. Strickland.

Conducting *de novo* review of this claim, we conclude that in light of the eyewitness testimony of Ziccarelli and Smith, in observing Petitioner and the shooting incident at issue, Petitioner cannot carry his burden to show prejudice. Accordingly, this claim of ineffective assistance of trial counsel does not afford Petitioner relief.[5]

---

[5] Petitioner also seemingly raises a claim that the "misconduct" of Juror No. 3 violated his rights to substantive due process, i.e., rendered his trial fundamentally unfair. ECF No. 2 at 12 ("Juror misconduct; violation of due process and ineffective assistance of counsel."). A claim that one was denied "due process" is a claim that one was denied "fundamental fairness." See Riggins v. Nevada, 504 U.S. 127, 149 (1992)("We have said that 'the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial,' *Spencer v. Texas*, 385 U.S. 554, 563-564 (1967)[.]"); Lisenba v. California, 314 U.S. 219, 236 (1941) ("The aim of the requirement of due process is . . . to prevent fundamental unfairness"); Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985)("In order to prevail on a claim that an . . . error deprived the defendant of due process
(footnote continued. . .)

### 3. Petitioner is Not Entitled to an Evidentiary Hearing.

Lastly, Petitioner claims that he is entitled to an evidentiary hearing in this Court on the two issues of trial counsel's ineffectiveness. ECF No. 16 at 3. Because the Pennsylvania Superior Court adjudicated Petitioner's ineffective assistance of counsel claim for failing to challenge the trial court's welcoming comments on the merits, this Court is precluded from conducting a hearing on this claim. Cullen v. Pinholster, 563 U.S. 170, 181-82 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court.").

Because it does not appear that the state courts decided Petitioner's second claim of ineffectiveness regarding Juror No. 3, the Pinholster bar does not apply to prevent this Court from conducting an evidentiary hearing.

Accordingly, where the Pinholster bar does not apply, the decision whether to hold a hearing in Section 2254 habeas proceedings is governed by 28 U.S.C. § 2254(e). To merit an

---

under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial"). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." Foy v. Donnelly, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted). Where the evidence of guilt is so strong that there is no reasonable probability that the verdict might have been different, errors, if any were committed, could not deny the defendant fundamental fairness. See, e.g., United States v. Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994)("To the extent any of the incidents constituted error, we believe that in light of the strong evidence of guilt, the errors were harmless and did not deprive Copple of a fundamentally fair trial."). Given the testimony of the two eyewitnesses, Ziccarelli and Smith, Petitioner cannot show that his trial was fundamentally unfair.

evidentiary hearing in habeas proceedings under § 2254(e), petitioner must have been diligent by seeking an evidentiary hearing "in state court in the manner prescribed by state law." Williams v. Taylor, 529 U.S. at 437.

Section 2254(e)(2) provides that:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—
>     (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The United States Court of Appeals for the Third Circuit has explained the significance of Section 2254(e)(2) in greater detail as follows:

> The Supreme Court has held that a failure to develop the factual basis of a claim in the opening clause of section 2254(e)(2) "is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). The Court distinguished the diligence requirement of the opening clause of section 2254(e)(2) from the diligence requirement of section 2254(e)(2)(A)(ii) by explaining that the latter refers to cases in which the facts underlying a claim could not have been discovered through due diligence while the former asks only whether "the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court...." Id. at 435, 120 S.Ct. at 1490.
>     Thus, there is a separate fault requirement in the opening clause of section 2254(e)(2) which asks whether the petitioner adequately and diligently pursued the factual basis of his claim in state court. If the petitioner fails in this regard and is therefore "at fault," the bar to relief in section (e)(2) is raised. Otherwise, if the petitioner is not "at fault," the court may exercise its discretion to grant an evidentiary hearing. *See Campbell*, 209 F.3d at 287 (stating that if section 2254(e)(2) does not bar an evidentiary hearing, federal courts have discretion to grant a hearing with the potential to advance the petitioner's claim).

15

Lark v. Sec'y Pennsylvania Dep't of Corr., 645 F.3d 596, 614 (3d Cir. 2011).

In the instant case, we find that Petitioner or his counsel is at fault for not developing the evidence in state court and thus, we are barred from providing him a hearing in federal court.

Here, the evidence that Petitioner seeks to elicit in an evidentiary hearing concerning the misconduct of Juror No. 3 and its potential impact on other prospective jurors was certainly available to him at the time of the trial. However, Petitioner argues that his trial counsel was ineffective for not raising the issue of the misconduct by Juror No. 3 and by not developing a record concerning this issue. Nonetheless, Petitioner had an opportunity in his PCRA proceedings wherein evidentiary hearings were held by the state court to develop this evidence but he still failed to develop evidence concerning the misconduct of Juror No. 3 and the impact thereof and/or the alleged ineffectiveness of his trial counsel for failing to develop this issue of misconduct and the impact thereof. Thus, we find that "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel" i.e., at least his PCRA counsel, within the contemplation of Williams v. Taylor which bars this court from conducting an evidentiary hearing on this issue.

Petitioner argues however, that if this Court finds some "fault attributable to petitioner for failure to develop facts in state court," Petitioner invokes Martinez v. Ryan, 566 U.S. 1 (2012) to excuse the fault due to alleged ineffectiveness of PCRA counsel for his failure to develop the necessary record. We are not persuaded.

Martinez v. Ryan, created a sea change in the doctrine of procedural default, holding for the first time that a claim of ineffective assistance of post-conviction relief counsel could serve as cause to excuse the procedural default of a claim of trial counsel's ineffectiveness. However, Martinez failed to address the issue of whether the alleged ineffectiveness of PCRA counsel

should serve to excuse PCRA counsel's failure to develop a factual record in order to merit the grant of a hearing in federal court. In fact, the language of Williams seemingly suggests a contrary rule: a hearing should not be held in federal court if there "is lack of diligence, or some greater fault, attributable to the prisoner **or the prisoner's counsel**." Williams v. Taylor, 529 U.S. at 432 (emphasis added). Thus, if Petitioner's counsel is at fault for failing to develop the evidence in state court, then a hearing in federal court is barred. Moreover, consistent with the foregoing analysis, several courts have observed that Martinez does not directly provide a basis for permitting a hearing in federal court where a Petitioner's counsel was at fault for failing to develop the facts in state court. Fielder v. Stevenson, No. 2:12-CV-00412-JMC, 2013 WL 593657, at *5 (D.S.C. Feb. 14, 2013) ("Several courts have held that the Supreme Court's holding in *Martinez* does not allow a petitioner to point to PCR counsel's failure to develop the factual record as the 'cause' of the procedural default. *See Halvorsen*, 2012 WL 5866595, at *4 ('Petitioner's argument that collateral-review counsel's failure to develop the record 'should serve as cause to excuse the lack of diligence is entirely inconsistent' with the general rule that lack of diligence is attributable to the prisoner or prisoner's trial counsel)"); Williams v. Mitchell, No. 1:09 CV 2246, 2012 WL 4505181, at *6 (N.D. Ohio Sept. 28, 2012) (finding that Martinez does not provide for "claims of ineffective assistance of post-conviction counsel to establish 'cause' for a 'default' of the factual development" of a petitioner's mental capacity in state court). Hence, we reject Petitioner's contention that Martinez excuses his PCRA counsel's failure to develop the record in the PCRA proceedings such that this Court can hold an evidentiary hearing on this claim in the first instance.

However, even if Martinez could be said to permit the ineffective assistance of PCRA counsel to serve as "cause" to excuse the failure of PCRA counsel to develop the factual record

17

in state court, we find that Petitioner has not exhausted his claim of "cause" such that this federal habeas Court may consider such "cause" in the first instance. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (holding that "an ineffective- assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). In his *pro se* brief on appeal to the Pennsylvania Superior Court from the PCRA court's denial of relief, Petitioner apparently did not argue that his PCRA counsel was ineffective for failing to develop the record with respect to Juror No. 3's misconduct and its alleged effect on the jury pool and/or with respect to any reason for trial counsel's failure to develop a record as to this issue at trial or otherwise seek a remedy then. See ECF No. 12-14 (listing the two issues Petitioner raised on appeal to the Superior Court in his pro se brief). Petitioner definitely did not raise the claim in his pro se Petition for Allowance of Appeal to the Pennsylvania Supreme Court from the Superior Court's affirmance of the denial of PCRA relief. ECF No. 12-14 at 14 – 35. Accordingly, Petitioner's claim of "cause" in the form of PCRA counsel's ineffectiveness is unexhausted and procedurally defaulted.

Accordingly, Petitioner is not entitled to have this Court conduct a hearing on either his first or second claim of ineffective assistance of trial counsel.

### E. CERTIFICATE OF APPEALABILITY

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Applying this standard to the instant case, the Court concludes that Petitioner has not made any such showing and further we conclude that jurists of reason would not find the disposition of this Petition debatable. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the reasons set forth herein, the instant Petition should be dismissed and a certificate of appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

BY THE COURT:

*s/ Maureen P. Kelly*
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Date: April 20, 2016

cc: The Honorable Cathy Bissoon
United States District Judge

DENARD GALLOWAY
EN-2702
S.C.I. Graterford
P.O. Box 244
Graterford, PA 19426

All Counsel of Record via CM-ECF